We will proceed to our fifth case this morning, Mr. Perez-Perez v. Barr. All right. I see two lawyers. Mr. Mazahiri, you may proceed. Yes, good afternoon, Your Honor. At least good afternoon here. I would like to first thank the panel for this opportunity to present my oral argument. May it please the court. I would like to first start with a statement that I think is not talked about much. And the importance of time and placement when it comes to the charging document, whether that charging document is called an NTA or an order to show cause. And I speak as a, both as an immigration practitioner and from personal experience. When I was a child, my family and I were in deportation proceedings, and I remember how important it was for my parents to know the time and place of the proceedings. Because everything else on those documents, whether they are the allegations or the charge of removability, to most people who barely speak English or have very limited knowledge of American law, those things don't mean much. But the most important thing is, where is my court? When is my court? Now, although my, now I'm going to get to the argument, although my reading of Pereira, like many of my colleagues, is different than that of this court. I do believe that the majority's opinion in Pereira, where it was stated that without a time and place, an NTA is not an NTA, that does strip a court of jurisdiction. But I know that with Ortiz-Santiago, the honors have taken a position. Although I don't understand how it's not looked at as it was by the majority in Pereira, I do want to go to Ortiz-Santiago and talk briefly about the impact of that finding on my client's case. Specifically, I would like to argue that the court's conclusion that defects in a charging document in removal proceedings fall under the claim processing rule rather than the jurisdictional rules. I would actually say that helps my client to some degree. If the claim processing, our argument, something of the factual argument, which is not in much dispute, not that I know of, our client claims that she did not receive adequate notice. And there is some indication, which I will actually refer to in the administrative record, that there may have been some confusion of what was served on my client. OSC, I agree that the date, based on the rule of that time, that the time and place could have been on a separate document, whether it was attached to the OSC or it was mailed in at some other time. Our argument is, and in two different affidavits, our client, one that was just this past year, one from almost 20 years ago, she claimed that she never received anything. Mr. Mazzaheri, can I ask you a question about that? Of course. Because I'm looking at the certified mail receipt that is part of the record that you refer to. Yes, you are. The mail receipt that was sent to the East 103rd Street address in Manhattan. And then you look at the, when I set that next to the order to show cause, and the signature that was lent to the Notice of Custody Determination in June 1990, they look like the same signature. And so, it sure looks to me like... Ms. Shea, could you please mute your microphone? Ms. Shea, could you please mute your microphone during Mr. Mazzaheri's argument? Thank you. So, Mr. Mazzaheri, all I was getting at with that question was, it seems that the decision to deny your client's application to reopen here, it's a discretionary decision, which I think you acknowledge. And then when you look at it factually, it looks, unfortunately for Ms. Perez, like it just has a very thin layer of factual support given the certified mail receipt. Yes, Your Honor. And I do not challenge the Court's sort of conclusion here that the signatures do match. We have gone through that. Obviously, by the time that we received the administrative record, it was, we had been retained for a long time. But here's the question. Here's what causes confusion, rather. I would like to direct the Court's attention to, I'm sorry, the panel's attention to AR 292-293, where those USPS return receipts can be found. The confusion is that there seems to be two different sets of court notices. One that was issued on May 29th, 1992, with a court date of, I believe, July 2nd, 1992. Then on July 2nd, another court notice was issued with a court date of July 30th, 1992. However, there's only one proof of mailing, and it's not clear what that proof of mailing was attached to. One was sent out, the certified mail was actually mailed out, I believe, on July 6th of 1992. On the bottom, within the Court's own notation, references printed originally and noted July 2nd of 1992. But at some point, and this causes great confusion, it is, it was crossed out by pen. So it's unclear whether that came back and that date was changed. The point I'm trying to make, it's not clear whether my client was sent the July, the notice for a July 2nd hearing or a notice for a July 30th hearing. I do agree with the Court that the fact that my client signed something causes some concern about her claim that she does not remember receiving anything. However, there is, the record is not complete. There should have been at least another proof of mailing for the notice that was issued on May 29th. But if I may just get back to, my point is that that raises some question about whether or not the notice that was mailed from the Court was actually the notice for that July 30th court date. And when you add the requirement of time and place, whether it should have been with the OSC or separate from the OSC, there are questions about the integrity of the process. Going back to the claim processing rule, if the litigation process was not handled properly by that time, by the Court at that time, then I believe the Court's position that all of this falls on the claim processing rule would actually help my client. So our argument would be that OSC, even though we accept the fact that there are questions of whether or not it should have included time and place when it was issued, but at some point there should have been a time and place, but there is enough in or in the administrative record to raise doubts about whether or not a proper notice was sent to my client. Yeah. Eric, can I ask you a quick question? Sure. You assert that there is a requirement that the notice provide at least 14 days advance notice of the hearing? This was, that was my understanding, yes, Your Honor. And do you know where that comes from, that deadline? I believe this was, that has more to do with the NTA. I believe that to give, I can't make the right citations at the moment, but it was designed to allow responders enough time to hire an attorney. Yeah, of course. I just, we hadn't found the source of it. That's all. Thank you. Now, going back to my understanding of Pereira, I am of the opinion that lack of time and notice in an NTA actually strips a court of jurisdiction. And as we argued in the, I just want to say, I'm going to actually, if the court's permission reserves time for rebuttal, I just noticed that I'm running late. That's fine. Thank you. Ms. Chay. Sorry, Your Honor, I had some technical issues. I didn't mean to have any noise. Can you hear me now, Your Honors? Yes. May it please the court. My name is Jacqueline Chay, and I represent the Attorney General of the United States in this case. I ask this court to come to the following two conclusions. One, the agency reasonably found that she was properly served her order to show cause and the subsequent notice of hearing. And two, the agency reasonably concluded that Pereira was inapplicable to this case. Your Honors, Ms. Pérez, in this case, was in deportation proceedings. She unlawfully entered the United States in 1990. Shortly after, she was personally served an order to show cause. The order to show cause charged that the subject was in deportation hearing as well. Yes, Your Honor? Oh, I'm sorry. I thought I saw someone had a question. And then in May 1992, it was filed with the Immigration Court. The record demonstrates here that Ms. Pérez was properly served. She was served personally with the order to show cause, and then a notice of hearing was later sent to her prior address. There's nothing in the record to indicate that that first notice of hearing was returned undeliverable. What appears is that she was in absentia at that hearing, so another notice of hearing was sent to her. And that was sent with personal service via certified mail, and that service was affected because it is signed. Her name is signed on the receipt of the certified mail, Rebecca Pérez, and that was returned to the court. Ms. Pérez asserts that she did not have notice for hearing, but yet she does not explain the signature on the certified mail receipt. It's clear in the board's decision that it took note of the affidavit and information in the record. However, it found with that certified mailing receipt that she was properly served. Your Honor, Pierre is inapplicable to this case. The Supreme Court in Pierre held that the alien who has served a notice to Pierre who did not specify the time and date of initial removal proceedings was not subject to the stop time for cancellation or removal. Here, the charging document at issue was an order to show cause, and she was served that order to show cause four years prior to the Nairere's enactment in this case. So the upholding of Pierre does not apply to her because we are not dealing with a notice to a Pierre. Additionally, in this case, that order to show cause was not defective. As this court has noted in Ortiz v. Barr, the statutory language at the time of an order to show cause did not require the order to show cause to indicate the time and place of hearing, as long as subsequent notice was sent to the alien, where in this case it was. She was properly served with the order to show cause and then subsequently sent that notice of hearing, which was served by certified mail, and that contained the time and date of hearing. Thus, at the time, the agency complied with the statute and regulations. Alternatively, if this court finds that Pierre should apply, her challenge would be foreclosed by Ortiz v. Santiago. Ms. Perez waives and forfeits any of her objections to her defective order to show cause and notice. Even assuming that she didn't receive the notice of the hearing, it's clear in the record that an immigration judge in July 1999 specifically noted that she should move to reopen her proceedings in absentia. Instead, here, she waited 18 years after that to file a motion to reopen, alleging this defect. So, Your Honor, I don't think that counsel had said that the claim processing role would help him. But when he was clear, she was clearly on notice in 1997 of the issue. She should have raised that issue. Additionally, I think one of your honors asked about the fourth day notice. I, too, did not find a source of that. I think the source in his brief referred to the general contents of the order to show cause and notice to appear. But I did not find a 14-day notice requirement. Even if there was, the order to show cause here, which she was personally served, did indicate her right to have an attorney to represent her. And then again, she received actual personal notice of that notice of hearing, indicating the time of hearing and her right to have an attorney, and that her proceeding could be in absentia if she did not appear. Your Honors, do you have any additional questions for me? Can you shed any light on the question raised earlier about which notice the certified mail receipt applied to? Your Honor, I believe that it definitely was for the second notice of hearing. Because it indicates that the regulations at the time, Your Honor, you could send notice of hearings by routine service. And in this case, it looks like that they sent that initial notice of hearing, sent to her last note address to schedule her hearing for July 2nd, and it appears that she was not there on the July 2nd hearing. And that's why they rescheduled or reset her hearing and sent that out, and certified mail proofs that. Excuse me, the initial notice did not have to be sent by certified mail. First class was okay at that time? Routine notice, yes, Your Honor. I believe the provisions at the time, 8 CFR 103.5, because this deportation hearing occurred in 1990. At that time, routine service of a notice of hearing was permissible. However, if you were to in absentia remove someone, personal service was required. And that is why that subsequent notice was sent out. And I think counsel mentioned the crossed off date. It does look like the IJ crossed it out. I think the indicated on the bottom of the return receipt, July 2nd, 1992. And it looks like the IJ just crossed that out and put the actual hearing date on there because it was incorrect. It was a typo. Thank you. Any additional questions, Your Honor? Apparently not. Thank you, Your Honor. Accordingly, the board acted within its discretion when it denied Mrs. Perez's motion to reopen. And we ask this court to deny the petition for review. Thank you, Your Honors. Thank you very much. I'm going to quickly just address the counsel's contention that there seemed to be a, or there must have been a hearing on July 2nd of 1992. I don't see anything in the administrative record to indicate that there was actually a hearing. So that's, and it is speculative to assume that the notice, the USPS proof of mailing was associated with the notice for the July 30th hearing. On another note, as far as the reason for my client not bringing up the issue of the processing violation, she never had the opportunity. That's our point, that if she was not served, there was no forum or tribune for her to bring up that notion. Thank you. All right. Thank you very much. Our thanks to both counsel and the case is adjourned.